UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YUVAL OLIVIER MINKOWSKI,

Plaintiff,

v.

BMO BANK N.A.,

Defendant.

Case No. 25-cv-06119-NW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: ECF No. 21

Before the Court is Defendant BMO Bank N.A.'s ("BMO") motion to dismiss Plaintiff Yuval Olivier Minkowski's first amended complaint ("FAC"). ECF No. 15. Plaintiff's suit alleges that BMO allowed Ms. Minkowski, Plaintiff's ex-wife, to withdraw $400,000 from the couple's joint home equity line of credit even after the bank had repeatedly assured Plaintiff (1) that the account was frozen, (2) that the account could not be reinstated without both co-borrowers' signatures, and (3) that Plaintiff would receive written notice before Ms. Minkowski gained access. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion.

I.    **BACKGROUND**

A.    **Factual Background**

On June 20, 2014, Plaintiff and his then-wife Julia Minkowski established a home equity line of credit ("HELOC") with Bank of the West.[1] The HELOC agreement named Plaintiff and Ms. Minkowski as co-borrowers. In 2019, the couple began divorce proceedings. As part of the separation process, Plaintiff sought, and on June 2, 2022 received from the Santa Clara County

---

[1] BMO acquired and became successor in interest to Bank of the West in February 2023.

Superior Court, a restraining order (the "Restraining Order") against Ms. Minkowski. Among other things, the Restraining Order barred Ms. Minkowski (and Plaintiff) from "transfer[ing], borrow[ing] against, sell[ing], hid[ing], or get[ting] rid of or destroy[ing] any property . . . except in the usual course of business or for necessities of life." *Id.* at 6. Restraining Order at 6, ECF No. 15-3. Plaintiff visited a Bank of the West branch in "late 2022" and presented the Restraining Order to an unnamed Mortgage Specialist. FAC ¶ 13. According to Plaintiff, the Mortgage Specialist assured him (1) that the HELOC was frozen and would remain frozen, (2) that both co-borrowers' signatures were required to reinstate, and (3) that Plaintiff would receive written notice before any access was granted. Though Plaintiff requested written confirmation of these assurances, none were provided. According to Plaintiff, he relied on the Mortgage Specialist's statement that nothing else could be done to prevent Ms. Minkowski's access to the HELOC, and Plaintiff took no further action.

Two years later, on February 20, 2024, Plaintiff received notice from his divorce attorney that Ms. Minkowski intended to draw on the HELOC. That same day, Plaintiff called BMO's credit support line, warned BMO of Ms. Minkowski's intent, and requested that BMO maintain all previously promised protections. According to Plaintiff, the unnamed Credit Agent with whom he spoke reaffirmed that all protections were in place, namely that: the HELOC was frozen, it could not be reinstated without both co-borrowers' signatures, and that BMO would inform Plaintiff in writing before any access was granted. The Credit Agent stated no additional steps were necessary to prevent access.

On February 27, 2024, Ms. Minkowski visited a branch of BMO and asked the bank to reinstate the account. The bank informed Ms. Minkowski that the account was frozen and could not be unfrozen without Plaintiff's written approval. Ms. Minkowski left the bank, but returned shortly thereafter with handwritten instructions dated February 23, 2024, authorizing actions "to advance HELOC credit line funds." ECF No. 15-4. The document included two signatures, one that clearly belongs to Ms. Minkowski and another that is unintelligible.

After reviewing Ms. Minkowski's signed document, BMO issued a letter addressed jointly to Plaintiff and Ms. Minkowski dated March 1, 2024, reinstating the line of credit. In the letter,

BMO explained that it had

> previously notified [Plaintiff and Ms. Minkowski] that, pursuant to the terms of your [HELOC] Agreement . . .., we were exercising our right to suspend your Line of Credit . . . . We are writing to let you know we have received your written request for reinstatement of your [HELOC]. We . . . . have approved your request to reinstate your Line of Credit in the amount of $500,000.00.

ECF No. 15-5.  On April 1, 2024, Ms. Minkowski withdrew $400,000 from the HELOC into a personal account with BMO, after which she transferred the funds to an account at a different institution.  Plaintiff claims that he never received BMO's March 1, 2024 letter.

Plaintiff learned of Ms. Minkowski's transfer on June 10, 2024, when reviewing his bank account statements.  As soon as Plaintiff discovered the transfer, he contacted BMO's fraud department, objected to the advance and transfer, and initiated an investigation.  At Plaintiff's request, a state court judge issued an order requiring Ms. Minkowski to return the $400,000 plus associated costs to the HELOC, but Ms. Minkowski has not done so as of the date Plaintiff filed the complaint in this action.

Though the bank investigated the circumstances of the withdrawal at Plaintiff's request, BMO determined no fraud had occurred and the reinstatement of the HELOC was in accordance the bank's policies and procedures.

Plaintiff has since closed the HELOC.  To do so, he was required to pay the $400,000 that Ms. Minkowski withdrew plus associated interest fees and costs, amounting to $490,840.07 total.

## B.    Procedural Posture

Plaintiff filed this action on July 21, 2025, and amended his complaint on September 16, 2025.  *See* ECF Nos. 1, 15.  The FAC alleges the following seven causes of action against BMO: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) violation of Cal. Comm. Code § 11101 *et seq.*; (5) promissory estoppel; (6) violation of Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); and (7) fraud.  BMO timely moved to dismiss all seven claims.  ECF No. 21.

United States District Court
Northern District of California

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  Conclusory legal allegations are similarly insufficient to defeat a motion to dismiss for failure to state a claim.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  Nevertheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.    Rule 9(b)

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).  The heightened pleading standard set forth in Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the

United States District Court
Northern District of California

4

charge and not just deny that they have done anything wrong.  Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citations omitted).

## III.    DISCUSSION

### A.    Breach of Contract (Count I)

A claim for breach of contract exists when there is: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).  "To allege breach, 'a plaintiff must identify a specific contract provision breached by the defendant.'" *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025) (quoting *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022)).

Plaintiff's FAC alleges that BMO breached the HELOC by acting in the following ways:

(a) Failing to enforce the restrictions placed on the HELOC;

(b) Allowing Ms. Minkowski to unfreeze the HELOC unilaterally;

(c) Allowing Ms. Minkowski to access HELOC funds in violation of the Restraining Order;

(d) Allowing Ms. Minkowski to access HELOC funds in violation of Mr. Minkowski's instruction to restrict use of access devices on the account;

(e) Failing to inform M[r]. Minkowski on a timely basis of Ms. Minkowski's instruction and transactions;

(f) Failing to inform Mr. Minkowski of, and to honor upon request, his right under the Credit Agreement and bank policy to terminate drawdown rights and direct BMO not to issue any new access devices, thereby allowing issuance of new checks and routing information and permitting the unilateral draw; and

(g) Issuing new access devices for the HELOC, among other things.

FAC ¶ 37.

As currently alleged, Plaintiff's breach of contract claim does not cite to any provision of the Credit Agreement that BMO supposedly violated.  While Plaintiff cites the Credit Agreement

in other sections of the complaint, those references concern *Plaintiff's* own obligations. *See* FAC ¶¶ 7-9 (citing provisions that (1) require Plaintiff to notify BMO in writing of any intent to cancel credit advances and (2) bar the illegal use of an access device and reserving BMO's right to decline its authorization of such transactions). On this basis alone, the FAC fails to sufficiently allege a breach of contract claim.

A closer look at the supposed violations further demonstrates their insufficiency. The first few relate to promises "agreed to orally after-the-fact," so they certainly cannot have been incorporated into the original agreement. Reply at 7-8; *see also* FAC ¶ 37(a)-(d). Other alleged violations concern BMO's failure to take certain actions that were completely within BMO's discretion. *See* FAC ¶ 37(e), (g). A final supposed violation faults BMO for failing to disclose information that was explicitly set forth in the Credit Agreement. *See* FAC ¶ 37(f). None of the alleged actions rise to the level of a breach of the terms of the Credit Agreement signed on June 20, 2014.

To the extent Plaintiff argues that the contract was orally modified, that claim cannot save him. Under the statute of frauds, any agreement pertaining to the sale of or interest in real property is invalid unless it is memorialized in writing and signed by the party to be charged. Cal. Civ. Code § 1624(a)(3); *Secrest v. Sec. Nat. Mortg. Loan Tr.*, 167 Cal. App. 4th 544, 552, *as modified on denial of reh'g* (Nov. 3, 2008). Plaintiff claims that BMO failed to enforce restrictions that he asked BMO to institute in 2022, several years after the Credit Agreement was signed. Even assuming BMO orally agreed to implement restrictions that contravened the Credit Agreement, BMO's failure to abide by its later promises is not a breach of the contract. When a written subject to the statute of frauds conflicts with later oral modifications, the written contract prevails when Plaintiff brings a cause of action founded in law (and not in equity). *See* Cal Civ. Code § 1698(c).

Plaintiff's breach of contract claim fails for a host of other reasons. First, Plaintiff failed to plead the second element required in a breach of contract claim, namely that he performed his end of the bargain (or had adequate reason not to do so). As BMO notes, Plaintiff agreed in the Credit Agreement, for example, not to give BMO "conflicting instructions, such as telling the bank not to

give advances to [Ms. Minkowski]." Mot. at 12 (citing FAC ¶ 3); Credit Agreement, ECF No. 15-1 at 2. The complaint itself indicates that Plaintiff did exactly that when he asked BMO to disallow drawdowns "from the HELOC without both co-borrowers' approval." FAC ¶ 13.

Despite these deficiencies, Plaintiff may be able to amend his complaint to cure the issues described above. Accordingly, the Court GRANTS BMO's motion to dismiss Count I with leave to amend.

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

"[W]here there is no breach of contract there can be no breach of the implied covenant of good faith and fair dealing." *Tran v. Kansas City Life Ins. Co.*, 228 F. Supp. 3d 1068, 1079 (C.D. Cal. 2017) (citing *San Diego Housing Comm'n v. Indus. Indem. Co.*, 68 Cal. App. 4th 526, 544 (1998)). Additionally, Plaintiff's contract claims are premised on "BMO's exercise of contractual discretion," Opp. at 7, which cannot sustain a claim for the breach of the implied covenant of good faith and fair dealing. *Kelly v. Skytel Commc'ns, Inc.*, 32 F. App'x 283, 285 (9th Cir. 2002) ("When a contract expressly confers unrestricted discretion on one party, courts may not imply a covenant of good faith and fair dealing to limit that party's discretion and contradict the contract's express terms.").

Accordingly, the Court GRANTS BMO's motion to dismiss Count II with leave to amend.

### C.    Negligence (Count III)

To state a claim for negligence, a plaintiff must show: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted). Where, as here, contract claims and negligence claims bleed together, it's worth setting out some grounding principles. First, "absent a duty, the defendant's care, or lack of care, is irrelevant" and plaintiff's negligence claim fails. *Dooms v. Fed. Home Loan Mortg. Corp.*, No. 11–0352, 2011 WL 1232989, at *11 (E.D. Cal. Mar. 31, 2011) (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 49 Cal. App. 4th 472, 481 (1996)). Beyond the duties explicitly set forth in an agreement between bank and customer, "[c]ourts have generally held that banks have a limited duty of care or no duty of care . . . California law is clear that a bank is under no duty to supervise

the activity of account holders or inquire into the purpose for which funds are being used." *Gray v. Ben*, No. CV2203090DSFPVCX, 2022 WL 16859609, at *4 (C.D. Cal. Nov. 9, 2022); *see also Law Firm of Fox & Fox v. Chase Bank, N.A.*, 95 Cal. App. 5th 182, 201 (2023) ("[B]anks have no duty to monitor withdrawals made by authorized parties in an authorized manner.").

Second, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 23 (2024) (quoting *Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000)). This rule, known as the economic loss rule, was developed to "prevent the law of contract and the law of tort from dissolving one into the other," *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004), and it bars claims in negligence for "pure economic loss—*i.e.*, damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort." *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021), *certified question answered,* 17 Cal. 5th 1 (2024) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)); *see also* Rest. 3d Torts, Liability for Economic Harm § 3 ("[T]here is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties."). To be sure, "[n]ot all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from — or are not independent of — the parties' underlying contracts." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923 (2022).

Plaintiff does not contest any of the principles described above, appearing to concede that the breach of any duty set out in the contract between the parties would be barred by the economic loss rule. *See* Opp. at 10. Instead, Plaintiff claims that BMO owed him a duty of care independent from the Credit Agreement. *See* Opp. at 7 ("When a bank undertakes to implement legal restraints on access to funds and to control access devices, it owes a duty to exercise ordinary care in performing that undertaking."). Plaintiff likens this case to *Law Firm of Fox & Fox v. Chase Bank, N.A.*, a recent California appellate case that found a bank had a duty to plaintiff because a special relationship existed between the two parties. 95 Cal. App. 5th 182 (2023). There, a probate court ordered the creation of a blocked account to hold the proceeds of the sale of real

8

property. *Id.* at 188.  The defendant bank acknowledged receipt of the court's order and certified it would not allow any withdrawals without express permission from the court.  *Id.*  Notwithstanding its affirmations otherwise, the bank allowed the administrator of the estate to withdraw the full amount in the account.

But *Fox & Fox* is inapplicable here.  That action did not include a contractual relationship between the parties, so the opinion does not shed any light on how to decide whether a claim arises from an underlying contract.  Admittedly, the court found that the bank owed the plaintiff a duty based on the "special relationship" between the parties because the probate court's order identified the law firm as "an intended beneficiary" of the blocked account.  *Id.*  But whether a special relationship exists is only relevant in circumstances in which the parties lack a contract. *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 937 (2022) ("*Biakanja* does not apply when the plaintiff and defendant are in contractual privity for purposes of the suit at hand." (citation omitted)).  Here, Plaintiff's claims are inexorably linked to the contract: without the obligations in the Credit Agreement, BMO would not have had any obligation to Plaintiff at all.

Plaintiff claims that BMO "owes a duty to exercise ordinary care" where it has agreed to "implement legal restraints on access to funds and to control access devices."  Opp. at 11.  But the Restraining Order issued in Plaintiff's divorce proceedings cannot and did not create a new obligation for the couple's bank.  The order merely stated, amongst a host of other provisions, that Plaintiff and Julia Minkowski "must not transfer, borrow against, sell, hide or get rid of or destroy any property, including animals, except in the usual course of business or for necessities of life." FAC ¶ 12.  It is well established that banks do not owe their customers a duty to supervise account activity, or to inquire as to why funds are being withdrawn or transferred.  *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 539 (1998) ("bank[s] cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities"); *Software Design*, 49 Cal. App. 4th at 481 (bank had no duty to supervise or track account activity even when customers "deposited and simultaneously withdrew hundreds of thousands of dollars," which was "a sharp indicator of money laundering").  The Restraining Order in this case does not change that general rule, particularly where that Order was not explicitly directed at BMO.

9

Accordingly, the Court GRANTS BMO's motion to dismiss Count III.

### D.    Cal. Comm. Code § 11101, *et seq.*

Plaintiff's fourth cause of action alleges a "Violation of California Commercial Code § 11101 et seq." The entire cause of action is only three paragraphs, reproduced below.

> Mr. Minkowski incorporates all prior allegations as if fully set forth herein.
>
> BMO's acceptance of Ms. Minkowski's payment order, subsequent transfer of funds from the HELOC account, refusal to refund the HELOC funds, refusal to reverse the transactions, or forgive the amount owed violate section 11101 et seq. of the California Commercial Code.
>
> Mr. Minkowski has suffered harm due to BMO's violation.

FAC ¶¶ 54-56.

The Court has reviewed the parties briefing on this issue, but finds it cannot adjudicate the sufficiency of a claim brought pursuant to an entire Division of the California Uniform Commercial Code. Plaintiff may not rely on broad "et seq." references to the relevant California codes, but must "allege [a] violation of a specific provision" of the relevant statutes. *See Oracle v. Santa Cruz Cnty. Plan. Dep't*, No. C 09-373 JF (PVT), 2009 WL 1371461, at *6 (N.D. Cal. May 15, 2009) (quoting *Sullivan v. City of Sacramento,* 190 Cal. App. 3d 1070, 1080 (1987)); *see also Nisbet v. Am. Nat'l Red Cross*, No. CV 16-7342-GW-ASx, 2016 WL 11803716, at *2 (C.D. Cal. Nov. 4, 2016) (finding the plaintiff did not state a cause of action arising under California state law by alleging a violation of the California Labor Code without citing to any specific provision therein). Accordingly, Count IV is dismissed with leave to amend provided Plaintiff can point to a particular statute that he claims BMO violated.

The Court GRANTS BMO's motion to dismiss Count IV with leave to amend.

### E.    Promissory Estoppel[2] (Count V)

In California, the elements of promissory estoppel require "(1) a clear promise, (2)

---

[2] Promissory estoppel is a claim for relief independent from a breach of contract claim. To the extent that Plaintiff's claims for promissory estoppel and breach of contract are in conflict, the federal rules allow a plaintiff to plead inconsistent claims in a complaint. *See Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) (holding that the federal rules give freedom to plead inconsistent claims). "[T]he principle of [promissory] estoppel . . . operates as an exception

10

reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed." *Poway Royal Mobilehome Owners Assn. v. City of Poway*, 149 Cal. App. 4th 1460, 1471 (2007) (citations omitted). Under this doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (quoting Restatement (Second) of Contracts, § 90(1) (1981)).

BMO challenges this cause of action by arguing that (1) it performed the alleged promises, and (2) Plaintiff did not reasonably rely on BMO's representations. Neither argument has merit. Whether BMO performed all alleged promises are issues of fact that cannot be decided at the motion to dismiss stage. Plaintiff claims, for example, that BMO promised it would provide Plaintiff written notice before granting Ms. Minkowski access to the HELOC but that BMO failed to do so. Though it appears BMO drafted a letter to Plaintiff to that effect, *see* Ex. 15-5, Plaintiff alleges that he never received it and that it may never have been sent to him. The Court must assume Plaintiff's allegations to be true for the purposes of this Order.

And Plaintiff has undoubtedly alleged that he relied on BMO's representations. He claims that *but for* BMO's promises, he would have begun the process to close the line of credit, issue additional written demands, or seek expedited court relief. *See* Opp. at 15. As a result of BMO's representations, Plaintiff did not do so. Thus, the HELOC remained active when Ms. Minkowski withdrew $400,000, creating fees, interest, and a charge to close the line. In sum, BMO's promises induced Plaintiff's forbearance, and that forbearance caused Plaintiff economic damage. This is enough to show reasonable reliance and actual damages.

The Court DENIES BMO's motion to dismiss Count V.

---

to the statute of frauds under California law." *Peterson v. Bank of Am., N.A.*, No. 09cv2570–WQH–CAB, 2010 WL 1881070, at *6 (S.D. Cal. May 10, 2010) (internal citations omitted).

11

#### F.      California Unfair Competition Law (Count VI)

In order to bring a claim for violation of California unfair competition law, California Business and Professions Code § 17200, *et seq.*, states "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *See Lippitt v. Raymond James Fin. Servs.,* (9th Cir. 2003), *as amended* (Sept. 22, 2003) (quoting Cal. Bus. & Prof. Code § 17200).  Plaintiffs may pursue claims under any or all of three theories: the "unlawfulness," "fraudulent," or "unfairness" prongs.  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999).  Because the UCL provides only for equitable remedies, plaintiffs bringing a UCL claim in a federal court must establish that they "lack[ ] an adequate remedy at law" before the court can award them the UCL's equitable relief.  *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Plaintiff fails to state a claim under any prong of the UCL.

**The "Unlawful" Prong.**  The "unlawful" prong "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).  Because the Court has dismissed all Plaintiff's claims that could serve as a predicate legal violation for a UCL claim, Plaintiff has failed to allege facts sufficient to state a claim under this prong.  *Hoggan v. Specialized Loan Servicing, LLC*, No. 221CV01862TLNCKD, 2022 WL 4291421, at *7 (E.D. Cal. Sept. 16, 2022) ("A remaining claim for promissory estoppel is insufficient to serve as the foundation for violation of the UCL.").

**The "Unfair" Prong.**  The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  There is currently a split among California appellate courts as to a definitive test for establishing that a business practice is unfair, in an action brought by a consumer, rather than a competitor.  *See Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 303 (2020) (acknowledging, though not resolving the split).

One line of cases applies a *tethering test*, requiring a UCL claim to be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-*

*Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999). A second line of cases applies an *immorality* test, inquiring whether the alleged business "practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requir[ing] the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* (citing cases) (internal quotations omitted). Finally, a third line of cases applies an *FTC test*, applying the definition of "unfair" in Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(n), thereby requiring that (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not have been reasonably avoided by the consumers themselves. *Id.* (citing cases) (quotations omitted).

In its motion, BMO applies the tethering test to Plaintiff's allegations, arguing that Plaintiff has failed to allege that BMO's conduct was tethered to any specific policy or law. Plaintiff, on the other hand, advances the FTC test. According to Plaintiff, BMO's decision to reinstate access to the HELOC and enable Ms. Minkowski's draw: "(1) caused substantial injury (fees, interest, and a forced payoff), (2) yield[ed] no consumer-facing benefit that outweighs the harm, and (3) was not reasonably avoidable, because BMO alone controlled the internal 'switches' governing freeze status, device issuance, and payment-order execution." Opp. at 20. Plaintiff further argues that his allegations offend "established public policies promoting transparency in bank operations and respect for court-imposed restraints in domestic proceedings." *Id.*

The Court agrees that Plaintiff has not satisfied the tethering test because the FAC does not allege that BMO's conduct violated any public policy "tethered to *specific* constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247 (2010) (emphasis added). But the Court finds that, as currently alleged, Plaintiff additionally has not satisfied the FTC test because he has not demonstrated that his injuries could not have been easily avoided. Plaintiff's injuries could have been avoided if he had closed the HELOC, as he did shortly after the events outlined in the FAC. *See, e.g.*, *Lesley v. Ocwen Fin. Corp.*, No. SA CV 12-1737-DOC, 2013 WL 990668, at *7 (C.D. Cal. Mar. 13, 2013) ("Plaintiffs similarly could have avoided their injuries if they had made their mortgage payments on time, meaning that they

reasonably could have been avoided.").  As a result, Plaintiff has failed to state a claim under this prong.

**The "Fraudulent" Prong.**  "A fraudulent business practice [under the UCL] is one which is likely to deceive the public." *McKell,* 142 Cal. App. 4th at 1471 (citing *Mass. Mut. Life Ins. Co. v. Super. Ct.,* 97 Cal. App. 4th 1282, 1290 (2002)).  The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to UCL "fraud" claims brought in federal court. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess,* 317 F.3d at 1102-05).  Here, Plaintiff's fraud claim under the UCL fails for the same reasons the independent claim of fraud fails: he has failed to provide the requisite particularity required under 9(b), and has further failed to allege the requisite intent to defraud.

Accordingly, the Court GRANTS BMO's motion to dismiss Count VI with leave to amend.

### G.    Fraud (Count VII)

"The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages." *West v. JPMorgan Chase Bank, NA*, 214 Cal. App. 4th 780, 792 (2013).  "When a plaintiff brings fraud or misrepresentation claims, 'Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  A plaintiff must plead "the who, what, when, where, and how of the misconduct charged." *Id.*  Applying this particularity requirement, the Ninth Circuit has held that a plaintiff must plead "times, dates, places" and other details.  *See Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985).  How much additional specificity is required depends on the nature of the individual case.  *See Arroyo v. Wheat,* 591 F. Supp. 141, 144 (D. Nev. 1984).

The bar is even higher when plaintiff brings a fraud claim against a corporation.  In those

United States District Court
Northern District of California

circumstances, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal. App. 4th 153, 157 (1991). Plaintiff rightly notes that "the requirement of specificity is relaxed when the allegations indicate that the defendant must necessarily possess full information concerning the facts of the controversy." *Id.* at 158. But in circumstances where the defendant "has no more reason [than the plaintiff] to know who made the allegedly false representations," that relaxation is not applicable. *Id.* In *Tarmann*, the court held that the plaintiff failed to state a claim for fraud against the defendant insurance company because she failed to allege the names of the persons alleged to have made misrepresentations (indeed, the plaintiff admitted that she did not know the names of the relevant people). *Id.* at 157-58. Though Plaintiff has argued that BMO is in a better position to know the identities of those who made the alleged false statements, he has not explained why that is so.

Plaintiff also fails to allege that BMO acted with the intent to deceive Mr. Minkowski when it made the alleged representations. While intent may be pleaded generally, the FAC fails to even reference the state of mind of BMO or its agents. Intent is an essential element of a fraud claim—without it, the claim cannot stand.

The Court GRANTS BMO's motion to dismiss Count VII with leave to amend.

## IV.    CONCLUSION

For the reasons stated, Plaintiff's motion to dismiss is GRANTED as to Counts I-IV, VI-VII and DENIED as to Count V. Plaintiff shall file any amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: March 18, 2026

_____
Noël Wise
United States District Judge

15