United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUVAL OLIVIER MINKOWSKI,<br>Plaintiff,<br>v.<br>BMO BANK N.A., et al.,<br>Defendants. | Case No. 25-cv-06119-NW<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 40 |

Before the Court is a joint motion to dismiss filed by Defendants BMO Bank N.A. ("BMO") and Dovenmeuhle Mortgage, Inc. ("DMI"), seeking to dismiss Plaintiff's second amended complaint ("SAC"). In his SAC Plaintiff alleges that, with DMI acting as BMO's mortgage servicer and account administrator for BMO, Defendants permitted Plaintiff's ex-wife, to withdraw $400,000 from the couple's joint home equity line of credit ("HELOC") despite assuring Plaintiff, through various alleged representations, that the account was frozen, would not be reinstated without both co-borrowers' signatures, and that Plaintiff would receive written notice before Ms. Minkowski was given access. After this Court's prior order granting in part and denying in part BMO's initial motion to dismiss, Defendants seek to dismiss Plaintiff's remaining claim for promissory estoppel. For the reasons explained below, the Court DENIES the motion.

## I. BACKGROUND

### A. Plaintiff's Original Allegations

The following allegations, alleged by Plaintiff in his first amended complaint, remain at issue in his SAC. In 2014, Plaintiff and his then-wife, Julia Minkowski, executed a credit

agreement (the "Credit Agreement") and established a HELOC with Bank of the West.[1] ECF No. 35 ("SAC") ¶ 8; ECF No. 35-1 (the Credit Agreement). In 2019, the couple began divorce proceedings. SAC ¶ 12. As part of the separation process, Plaintiff sought, and on June 2, 2022, received from the Santa Clara County Superior Court, a restraining order against Ms. Minkowski preventing her from, among other things, "transfer[ing], borrow[ing] against, sell[ing], hid[ing], or get[ting] rid of or destroy[ing] any property . . . except in the usual course of business or for necessities of life." *Id.* ¶ 13; ECF No. 35-3 (the "Restraining Order") at 6. In late 2022, with the Restraining Order in hand, Plaintiff visited a branch of Bank of the West and asked an unnamed Mortgage Specialist to:

> implement all available protections to prevent Ms. Minkowski from accessing the HELOC. The Mortgage Specialist . . . assured and promised Mr. Minkowski that the HELOC was frozen and would remain frozen; that Bank of the West would provide written notice to Mr. Minkowski before any access could be granted if Ms. Minkowski attempted to draw [money from the HELOC]; and that drawdowns could not be made from the HELOC without both co-borrowers['] approval.

SAC ¶ 14. The Mortgage Specialist also represented "there was nothing else that could be done to prevent Ms. Minkowski from accessing the HELOC" and, relying on the that representation, "Mr. Minkowski took no further action regarding the HELOC at that time." *Id.* ¶ 15.

In February, 2024, via his divorce attorney, Plaintiff learned that Ms. Minkowski intended to withdraw money from the HELOC. *Id.* ¶ 26. That same day, Plaintiff called BMO.[2] *Id.* He warned of Ms. Minkowski's intent, and an unnamed Credit Agent reaffirmed the prior representations, including that "no additional steps were necessary to prevent [Ms. Minkowski's] access." *Id.*

On February 27, 2024, MS. Minkowski went to a BMO branch and asked for an advancement of funds. *Id.* ¶ 29. The bank informed Ms. Minkowski that the account was frozen and could not be unfrozen without Plaintiff's written approval. *Id.* Ms. Minkowski left the bank,

[1] BMO acquired and became successor in interest to Bank of the West in 2023. SAC ¶ 18.

[2] As alleged in the SAC, it is unclear whether Plaintiff contacted BMO or DMI via a BMO phone number. *See, infra*, § I.B., below.

but returned shortly after with handwritten instructions dated February 23, 2024, authorizing actions "to advance HELOC credit line funds." *Id.*; ECF No. 35-4. On March 1, 2024, BMO issued a letter addressed jointly to Plaintiff and Ms. Minkowski, explaining that BMO had reviewed "your written request for reinstatement of" the HELOC and "approved [it] in the amount of $ 500,000.00." *Id.* ¶¶ 31–34.

Ms. Minkowski withdrew $400,000 from the HELOC on April 1, 2024, and transferred the funds to a different account in her own name. *Id.* ¶ 26. When Plaintiff learned of the withdrawal in June, 2024, he initiated an investigation with BMO and, in July, with the Consumer Financial Protection Bureau ("CFPB"). *Id.* ¶¶ 37, 39. At Plaintiff's request, a state court judge also issued an order requiring Ms. Minkowski to return the $400,000 plus associated costs to the HELOC. *Id.* ¶ 38; ECF No. 35-6.

As of the filing of the SAC, Ms. Minkowski has not complied with the state court's order. *Id.* ¶ 38. In September 2024, BMO responded to the CFPB investigation, finding "that no fraud occurred" and begin charging Plaintiff interest and penalties on the HELOC. *Id.* ¶¶ 42–43, 45–46. On February 12, 2025, "to prevent continued accrual of interest and penalties along with deterioration of his credit history, Mr. Minkowski paid the entire outstanding amount," *i.e.*, $490,840.07, and closed the HELOC. *Id.* ¶ 46

**B. The Court's Prior Order and Plaintiff's Additional Allegations**

Upon BMO's initial motion to dismiss, this Court dismissed Plaintiff's:

(1) breach-of-contract claim, premised on the Credit Agreement, with leave to amend;

(2) breach-of-implied-covenant claim accordingly with leave to amend;

(3) negligence claim without leave to amend;

(4) claim under the "section 11101 *et seq.* of the California Commercial Code" broadly, with leave to amend;

(5) claim under the California unfair competition law with leave to amend as to the "fraudulent" competition prong; and

(6) claim for common-law fraud with leave to amend.

The Court denied BMO's motion to dismiss Plaintiff's promissory estoppel claim.

Plaintiff filed an SAC, but did not amend any of his dismissed claims. Rather, Plaintiff expanded his promissory estoppel claim in two ways.

First, Plaintiff joined DMI as a defendant in this action. "DMI provided mortgage-servicing, special-loans, call-center, customer-service, complaint-handling, and account-administration functions with BMO with respect to the HELOC. SAC ¶ 3. Plaintiff explains that he did not discover DMI's role in the allegations alleged here until receiving documents from BMI in discovery and that, from his "perspective, there was no distinction between BMO and [DMI as to] his HELOC. He hand-delivered the Restraining Order to BMO employees at a BMO branch, called only BMO telephone numbers, and dealt only with persons who held themselves out to be BMO specialists[.]" *Id.* ¶¶ 7, 21–23. Accordingly, he asserts his promissory estoppel claim against DMI as an agent of BMO with respect to the HELOC. *Id.* ¶ 51.

Second, Plaintiff further developed his allegations regarding the promises that BMO and/or DMI made to him, the ways in which those promises were breached, and BMO's subsequent investigation. *See id.* ¶¶ 17, 24–27, 34–36, 40–41. For example, Plaintiff notes that when Bank of the West "froze" his account, they in fact marked it suspended for delinquency (which was inaccurate). *Id.* ¶ 17. Then, in 2023, when BMO and thus DMI took over for Bank of the West, "DMI raised questions about freeze codes and statuses on the transferred HELOC accounts, including freezes associated with divorce or legal actions," and indicated they didn't have a freeze code for such situations. *Id.* ¶ 24. When BMO "personnel then attempted to determine why Mr. Minkowski's line had been frozen," they could not figure it out and "lifted the freeze without advising Mr. Minkowski" even prior to February 2024 (despite their representations to Plaintiff and Ms. Minkowski). *Id.* ¶¶ 25–26. As another example, Plaintiff alleges that BMO's internal fraud investigation revealed that Ms. Minkowski did not forge Mr. Minkowski's signature in her attempt to reinstate the HELOC, but that she "sought reinstatement on her own without obtaining or providing Mr. Minkowski's signature at all." *Id.* ¶ 42. BMO therefore appears to have unfrozen the account without both co-borrower's signatures. *Id.*

BMO and DMI move to dismiss Plaintiff's amended claim for promissory estoppel.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. But a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. DISCUSSION

Defendants' joint motion seeks to dismiss Plaintiff's claim for one reason: the parties' relationship was governed by the written Credit Agreement. ECF No. 40 at 8–10. Plaintiff raises a procedural issue in his opposition, which the Court turns to first, before resolving the merits of Defendants' motion.

### A. DMI is Entitled to a Motion to Dismiss and, in the Interest of Judicial Efficiency, the Court Will Consider BMO's Identical Argument

Plaintiff argues Defendants improperly seek to relitigate the Court's Prior Order, which allowed his promissory estoppel claim to proceed. ECF No. 44 at 9–10. But Defendants are right to point out in their reply that DMI has not previously moved to dismiss Plaintiff's complaint because it was not a party to this action, and BMO does not advance the same legal theory as it previously did. *See* ECF No. 46 at 5–6. As to BMO, Plaintiff raises a fair Rule 12(g) concern: BMO could have raised the same defense in its prior Rule 12(b)(6) motion, and "[t]he plain text of Rule 12(g) prohibits a party from filing a second motion to dismiss on a ground that was available

but omitted from an earlier motion to dismiss." *See Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018). Nonetheless, the Ninth Circuit has explained that "in light of the Federal Rules of Civil Procedure's policy favoring 'just, speedy, and inexpensive determination' of actions,'" a Court may elect to "review arguments offered for the first time in a second motion to dismiss" if judicial efficiency would be served by doing so. *Id.* (explaining *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017)).

This is DMI's first motion to dismiss, and so the Court must consider the argument as brought by DMI. It would both be inefficient and make little sense not to consider the identical argument brought by BMO because, for the purposes of the joint motion, all parties treat DMI and BMO as one and the same. The Court therefore turns to the merits of Defendants' argument.

**B. The Credit Agreement Does Not Bar Plaintiff's Promissory Estoppel Claims**

In California, the elements of promissory estoppel require "(1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed." *Poway Royal Mobilehome Owners Assn. v. City of Poway*, 149 Cal. App. 4th 1460, 1471 (2007) (citations omitted). Under this doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (quoting Restatement (Second) of Contracts, § 90(1) (1981)).

Defendants argue that even if Plaintiff's promissory estoppel claim were otherwise valid, "[i]t is well-settled that an action for promissory estoppel will not lie when the parties' relationship is governed by a written agreement." ECF No. 40 at 9 (collecting authority from this Circuit). Defendants contend that is the case here, because the Credit Agreement (which is an exhibit to and therefore part of Plaintiff's SAC) includes several provisions relating to Plaintiff's allegations here:

/ / /

/ / /

- If there is more than one Borrower, . . . [e]ach Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement." ECF No. 35-1 at 2.
- "If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other." *Id.* at 3.
- "**Change in Terms.** We may make changes to terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account or if the change is insignificant (such as changes relating to our data processing systems)." *Id.* at 5.
- A standard integration clause. *See id.* at 13.

But Plaintiff points out in opposition that California law does not recognize such a strict categorical rule as Defendants propose. ECF No. 44 at 10–11. California courts recognize a narrower exception: promissory estoppel is inapplicable where a party's "performance was requested and bargained for at the time the promise was made." *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (explaining *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240 (1969) (California Supreme Court holding that promissory estoppel was inapplicable to an alleged oral promise by an employer to make an annual merit increase in pay, where the employee at the same time entered into an employment contract). Although both parties cite *Walker*, it supports Plaintiff's position here.[3] The promises and representations Plaintiff complains of were made gratuitously by Defendants' agents, were not supported by consideration, and were not made at the time of the original bargain (*i.e.*, in 2014). Here, "no benefit flows to the promisor" – Defendants received nothing by agreeing to freeze the HELOC. Thus, is not the case where "a party to a negotiated commercial bargain [is given] a second bite at the apple in the event [he] fails to prove

[3] Defendants' other authorities do not persuade the Court otherwise. Their leading case, *Barnhart v. N.Y. Life Ins. Co.*, interpreted promissory estoppel under Washington and not California law. *See* 141 F.3d 1310, 1314 (9th Cir. 1998). Defendants' remaining authorities are non-binding, and not persuasive on the facts of this case.

United States District Court
Northern District of California

a breach of contract." *Contra Walker*, 728 F.2d at 1220.

Alternatively, Plaintiff is also correct that California courts routinely apply promissory estoppel in the lender-induced-reliance context, notwithstanding the existence of agreements governing the parties' relationships. Plaintiff cites to several cases where financial institutions made promises to borrowers via their agents, and courts permitted claims of promissory estoppel to proceed when those promises were not honored. ECF No. 44 at 13–14 (citing *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1039–45 (2010) (promise to postpone foreclosure sale); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225–31 (2011) (promise to "work with [plaintiff] on a mortgage reinstatement and loan modification"); *Rockridge Tr. v. Wells Fargo NA*, No. 13-cv-01457-JCS, 2014 WL 688124, at *15 (N.D. Cal. Feb. 19, 2014) (promissory estoppel could be supported by "conversations throughout 2009 promising to not foreclose and to modify the loan, (2) a September 15, 2011 conversation [] promising to not foreclose, to accept payments, and to modify the loan, and (3) a February 28, 2013 conversation [] promising to postpone the trustee's sale.").

Defendants only argument against application of the "California lender cases" is that "none of the cases involve an oral promise that directly contradicts the terms of a written agreement" because there was "no express contract in place governing the same subject matter[.]" ECF No. 46 at 10–13. But their assertion that each of these cases lacked an express contract is unsupported. Two of the decisions explicitly mention a governing loan (*Aceves* and *Rockridge*), although the loans' exact terms are not described. And in each case, it would be highly implausible that sophisticated financial institutions did not have express, written mortgage agreements with terms governing the foreclosure process and loan modification processes. The situation here is similar. Plaintiff alleges that BMO and/or DMI made gratuitous promises to freeze the HELOC, to only permit it to be unfrozen via both co-borrowers' signatures, and to notify Plaintiff prior to advancing credit to Ms. Minkowski, and induced his reliance by repeatedly assuring him that "there was nothing else that could be done" and "no additional steps were necessary to prevent access." SAC ¶¶ 15, 26.

Whether because Defendants' promises were not part of the contract bargained for in 2014

or because this case fits with the California-lender line of cases, the Court finds no reason to depart from its Prior Order holding that Plaintiff has stated a claim for promissory estoppel. Defendants' motion to dismiss is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. Defendants shall answer the SAC **no later than September 24, 2026.**

**IT IS SO ORDERED.**

Dated: September 10, 2026

Noël Wise
United States District Judge